UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ECHOSPAN, INC.,

          Plaintiff,

   v.

MEDALLIA, INC.,

          Defendant.

Case No. 22-cv-01732-NC

**CLOSING JURY INSTRUCTIONS AND FINAL VERDICT FORM**

Having considered the parties' objections, this Court issues its closing instructions and verdict form. This Court does not request and will not permit further briefing or argument on these documents and will read and present them to the jury as they appear below. The parties' objections as stated in ECF 379 and 380 and during oral argument remain a part of the record.

This Court highlights the following substantive changes to the proposed jury instructions and verdict form:

1. **Ownership of Trade Secrets:** This Court adds ownership as an essential element of proof for EchoSpan's trade secret misappropriation claim. This comports with the statutory requirements of EchoSpan's trade secret claims. And this Court finds Medallia has presented sufficient evidence viewed in the light most favorable to Medallia upon which a reasonable jury could find EchoSpan did not own the alleged trade secrets at issue.

2. **Exemplary Damages:** The jury will decide the amount of exemplary damages. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 495 (2008) ("As for procedure, in most American jurisdictions the amount of the punitive award is generally determined by a jury in the first instance . . ."); *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001) (". . .compensatory damages and punitive damages are typically awarded at the same time by the same decisionmaker. . ."); *Nat'l Ass'n for Advancement of Colored*

*People v. Overstreet*, 221 Ga. 16, 31 (1965) ("The question of [punitive] damages being one for the jury, the court should not interfere, unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias.") (quotations omitted).

3. **Substantial Portion:** Because the term "substantial portion" does not appear in the language of either the DTSA or GTSA and to avoid confusion of the jury, this Court does not include Medallia's suggested instruction on "substantial portion." "Substantial portion" comes from the Restatement Third, Unfair Competition, § 40 cmt. c (1995). Though Georgia state courts have otherwise relied on the Restatement in trade secret actions, *See Essex Grp., Inc. v. Southwire Co.*, 269 Ga. 553, 554 (1998), only one has mentioned the term "substantial portion" and that court referred to an argument of the parties not a rule of law. *See Equifax Servs., Inc. v. Examination Mgmt. Servs., Inc.*, 216 Ga. App. 35, 36 (1994).

4. **Readily Ascertainable:** Based on the language of the DTSA and GTSA, and persuasive authority on both, this Court finds that EchoSpan must prove its trade secrets were not readily ascertainable. *See Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1332 (N.D. Ga. 2007); *Masimo Corp. v. True Wearables Inc.*, No. 18-CV-2001-JVS, 2021 WL 2548690, at *3 (C.D. Cal. Apr. 28, 2021).

5. **Contract Damages:** Instructions added at Instruction No. 27. [Source: *Goody Prod., Inc. v. Dev. Auth. of City of Manchester*, 320 Ga. App. 530, 539 (2013); Georgia Suggested Pattern Jury Instructions 18.010, 18.030; *Williamson v. Strickland & Smith, Inc.*, 263 Ga. App. 431, 434 (2003); *Grossberg v. Judson Gilmore Assocs., Inc.*, 196 Ga. App. 107, 108 (1990)]

6. **Discounting to Present Value:** Instructions added at Instruction No. 28. [Source: Ninth Circuit Manual of Model Civil Jury Instructions, 5.4]

     **IT IS SO ORDERED.**

Dated: October 30, 2023



NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California

**Jury Instructions # 1**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case. Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with the law or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**Jury Instruction #2**

As you have heard, this case is a civil dispute between two corporations, EchoSpan, Inc. and Medallia, Inc.  The following Updated Statement is intended to remind the jury of the claims and defenses presented in this case.  And it also informs the jury that since the introduction to the case on October 23, the claims and defenses have narrowed.  The jury will no longer be asked to evaluate Alleged Trade Secret Number 5 (EchoSpan's Client Management Portal) and Alleged Trade Secret Number 9 (the compilation of the features in alleged trade secrets 1 through 8).  And the jury no longer will be asked to determine whether Medallia entered into a valid contract by agreeing to EchoSpan's Terms and Conditions.  You should not speculate as to the reasons for these changes.

In this lawsuit, EchoSpan alleges that Medallia misappropriated certain alleged trade secrets related to its software tool.  The jury will assess 7 alleged trade secrets, numbers 1, 2, 3, 4, 6, 7, and 8 as set forth in the Opening Jury Instructions.

Medallia denies EchoSpan's claims and asserts that EchoSpan has publicly disclosed the features of its software tool such that the information does not constitute trade secrets. Medallia also asserts that it created its 360-degree feedback solution using

specific requirements provided from Bank of America. Medallia also contends that it did not use any information from EchoSpan's tool in developing a 360-degree employee feedback solution for Bank of America.

Both parties also filed breach of contract claims against each other. EchoSpan alleges that Medallia breached certain provisions of its Terms and Conditions. Medallia denies that it breached the Terms and Conditions.

Medallia filed a counterclaim alleging that EchoSpan breached the parties' Non-Disclosure Agreement. EchoSpan disagrees and claims that it was fraudulently induced to enter into the Non-Disclosure Agreement.

EchoSpan seeks compensatory and exemplary damages for Medallia's alleged misappropriation of EchoSpan's alleged trade secrets, and compensatory damages for its breach of contract claim.  Medallia seeks nominal damages for its breach of contract claim against EchoSpan. Both parties deny that the other is entitled to any damages. Medallia denies that it caused EchoSpan damages because it contends that EchoSpan lost Bank of America as a customer through its own actions or inactions before any trial access to its software.

**Jury Instruction # 3**

The evidence you are to consider in deciding what the facts are consists of:

1.  The sworn testimony of any witness;

2.  The exhibits that are admitted into evidence; and

3.  Any facts that I have instructed you to accept as proved.

**Jury Instruction # 4**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

You should consider video deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

United States District Court
Northern District of California

**Jury Instruction # 5**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.   Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.   Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.   Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

4.   Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Jury Instruction # 6**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water

United States District Court
Northern District of California

on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

**Jury Instruction # 7**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. The opportunity and ability of the witness to see or hear or know the things testified to;

2. The witness's memory;

3. The witness's manner while testifying;

4. The witness's interest in the outcome of the case, if any;

5. The witness's bias or prejudice, if any;

6. Whether other evidence contradicted the witness's testimony;

7. The reasonableness of the witness's testimony in light of all the evidence; and

8. Any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number

of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Jury Instructions # 8**

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**Jury Instructions # 9**

You have heard testimony from four individuals who testified to opinions and the reasons for their opinions: Monty Myers and Ian Ratner for EchoSpan, and Jennifer Golbeck and Carlyn Irwin for Medallia. This expert opinion testimony is allowed, because of the education or experience of these witnesses.

Such expert opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**Jury Instruction #10**

During parts of the trial, the Court sealed the courtroom from the public. The reason the Court sealed the courtroom is because one of the parties asked that the courtroom be sealed for that portion of the trial in anticipation of a party discussing what that party contends to be confidential information. The jury should not consider the Court's sealing, or unsealing, of the courtroom as indicative, one way or the other, of whether the information presented is actually confidential. The fact that the courtroom was sealed should have no bearing on the jury's deliberations.

**Jury Instruction # 11**

Each one of us has biases about or certain perceptions or stereotypes of other people. We may be aware of some of our biases, though we may not share them with others. We may not be fully aware of some of our other biases.

Our biases often affect how we act, favorably or unfavorably, toward someone. Bias

can affect our thoughts, how we remember, what we see and hear, whom we believe or disbelieve, and how we make important decisions.

As jurors you are being asked to make very important decisions in this case. You must not let bias, prejudice, or public opinion influence your decision. You must not be biased in favor of or against parties or witnesses because of their disability, gender, gender identity, gender expression, race, religion, ethnicity, sexual orientation, age, national origin, or socioeconomic status.

Your verdict must be based solely on the evidence presented. You must carefully evaluate the evidence and resist any urge to reach a verdict that is influenced by bias for or against any party or witness.

**Jury Instruction # 12**

You will be asked to apply two different burdens of proof in this case. I will describe each to you now.

1.     Preponderance of the Evidence: When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

2.     Clear and Convincing Evidence: When a party has the burden of proving any claim or affirmative defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. In this case, the only claims requiring a clear and convincing evidence standard are EchoSpan's claims for exemplary damages.

Your verdict form will state which burden applies. You should base your decision on all of the evidence, regardless of which party presented it.

**Jury Instruction # 13**

Now I will instruct you on the elements of EchoSpan's claims for misappropriation of trade secrets. EchoSpan claims that information related to certain features of its 360-

United States District Court
Northern District of California

degree employee feedback and performance review software tool are its trade secrets and that Medallia misappropriated them.

The Alleged EchoSpan Trade Secrets are listed below:

- Alleged Trade Secret 1: The "Report Template Editor" Feature
- Alleged Trade Secret 2: The Batch Reporting Technology
- Alleged Trade Secret 3: The "Legal Scan" Feature
- Alleged Trade Secret 4: The Customization Options Available to Customers Regarding Selecting Raters
- Alleged Trade Secret 6: The Design and Organization of the User Interface For Managing Projects
- Alleged Trade Secret 7: The "Project Autopilot" Feature
- Alleged Trade Secret 8: The "Coaching Opportunities Analyzer" Feature

The listing of the Alleged EchoSpan Trade Secrets has been done for your convenience. It does not mean that they are (or are not) in fact trade secrets. For each, or any, alleged trade secret, EchoSpan must still prove the alleged trade secret qualifies as a trade secret and was misappropriated by Medallia. You are only to consider and decide claims on these alleged trade secrets.

**Jury Instruction # 14**

To succeed on its claim, EchoSpan must prove its alleged trade secrets:

1.     Were owned by EchoSpan;
2.     Were trade secrets at the time of the misappropriation; and
3.     That Medallia improperly acquired or used the trade secrets.

**Jury Instruction #15**

A trade secret is information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers that:

1.     Is secret;
2.     Derives independent economic value, actual or potential, from being secret;

9

3.     Is the subject of reasonable efforts under the circumstances to maintain its secrecy or confidentiality; and

4.     Is not generally known or readily ascertainable by proper means.

The term "trade secret" can include compilations of public information when combined or compiled in a novel way, even if a portion or every individual portion of that compilation is generally known. Combinations or compilations of public information from a variety of different sources, when combined or compiled in a novel way, can be a trade secret. In such a case, if a portion of the trade secret is generally known or even if every individual portion of the trade secret is generally known, the compilation or combination of information may still qualify as a trade secret if it meets the definition of a trade secret set forth in the preceding paragraph.

**Jury Instruction # 16**

In articulating a trade secret, it is not enough for EchoSpan to point to broad areas of technology. Instead, it is EchoSpan's burden to identify concrete information that it contends constitute its Alleged Trade Secrets. This requirement applies separately to each item that EchoSpan alleges is a trade secret.

**Jury Instruction # 17**

A trade secret must not have been generally known to the public or to people who could obtain value from knowing it. A trade secret does not have to be secret in the absolute sense that no one else in the world possesses the information. For example, it may be disclosed to employees involved in EchoSpan's use of the Alleged Trade Secret as long as they are obligated to keep the information secret. It may also be disclosed to nonemployees if they are obligated to keep the information secret. This requirement applies separately to each item that EchoSpan alleges is a trade secret.

**Jury Instruction # 18**

A trade secret has independent economic value if it would have given the owner an actual or potential business advantage over others who did not know the information and who could have obtained economic value from its disclosure or use. In determining

whether the information had actual or potential independent economic value because it was secret, you may consider the following:

1. The extent to which the owner obtained or could have obtained economic value from the information in keeping it secret;

2. The extent to which others could have obtained economic value from the information if it were not secret;

3. The amount of time, money, or labor that the owner expended in developing the information; and

4. The amount of time, money, or labor that defendant saved by using the information.

The presence or absence of any one or more of these factors is not necessarily determinative. This requirement applies separately to each item that EchoSpan alleges is a trade secret.

**Jury Instruction # 19**

EchoSpan must also prove that it made reasonable efforts under the circumstances to keep its Alleged Trade Secrets secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as EchoSpan, exercising due care to protect important information of the same kind. This requirement applies separately to each item that EchoSpan alleges is a trade secret.

In determining whether or not EchoSpan made reasonable efforts to keep the information secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

1. Whether documents or computer files containing the information were marked with confidentiality warnings;

2. Whether EchoSpan instructed its employees to treat the information as confidential;

3.    Whether EchoSpan restricted access to the information to persons who had a business reason to know the information;

4.    Whether EchoSpan kept the information in a restricted or secured area;

5.    Whether EchoSpan required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

6.    Whether EchoSpan took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;

7.    The extent to which any general measures taken by EchoSpan would prevent the unauthorized disclosure of the information;

8.    Whether there were other reasonable measures available to EchoSpan that it did not take;

The presence or absence of any one or more of these factors is not necessarily determinative. This requirement applies separately to each item that EchoSpan alleges is a trade secret.

**Jury Instruction # 20**

EchoSpan must prove the trade secret information allegedly used or disclosed by Medallia was not readily ascertainable by proper means at the time of the alleged misappropriation. Information that is generally known or is readily ascertainable by proper means by those skilled in the art at the time of the alleged misappropriation cannot qualify as a trade secret. There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, reverse-engineered, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials or if it could be readily determined by those skilled in the art. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in

gathering it, the less likely it is readily ascertainable by proper means. This requirement applies separately to each item that EchoSpan alleges is a trade secret.

**Jury Instruction # 21**

If you find that EchoSpan has proven by a preponderance of the evidence that a trade secret existed, then you must decide whether Medallia misappropriated that trade secret information. To prove that a misappropriation occurred, EchoSpan must prove by a preponderance of the evidence that:

1. Medallia acquired EchoSpan's trade secret knowing or having reason to know that the trade secret was acquired by improper means; or

2. Medallia disclosed or used EchoSpan's trade secret without EchoSpan's express or implied consent, and Medallia:

    A.    Used improper means to acquire knowledge of the trade secret; or

    B.    At the time of the disclosure or use of the trade secret, knew or had reason to know that knowledge of the trade secret was:

        i.    Derived from or through a person who used improper means to acquire it; or

        ii.    Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

        iii.    Derived from or through a person who owed a duty to EchoSpan to maintain its secrecy or limit its use.

The phrase "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means, or downloading copies of confidential information for purposes other than serving the interests of an employer.

On the other hand, the phrase "improper means" does not include acquiring information through reverse engineering, independent development, or obtaining the information from public sources.

**Jury Instruction # 22**

In addition to EchoSpan's trade secret claims, EchoSpan also claims Medallia breached its Terms and Conditions through Medallia's free-trial use of EchoSpan's 360 feedback software.  To recover damages for breach of contract, EchoSpan must prove all of the following by a preponderance of the evidence:

1. That Medallia violated confidentiality provisions of the Terms and Conditions; and

2. That EchoSpan was harmed by that action.

If you find EchoSpan has proved each element, then you must find for EchoSpan on their breach of contract claim. If, on the other hand, you find that EchoSpan has failed to prove any one of these elements, then you cannot find for EchoSpan on its breach of contract claim.

Medallia brings a counter-claim against EchoSpan, alleging EchoSpan breached the Non-Disclosure Agreement by disclosing protected information to Bank of America. To recover damages for breach of contract, Medallia must prove all of the following by a preponderance of the evidence:

1. That the parties agreed to the Non-Disclosure Agreement;

2. That EchoSpan disclosed information protected under the Non-Disclosure Agreement; and

3. That Medallia was harmed by that action.

If you find Medallia has proved each element, then you must find for Medallia on their breach of contract claim. If, on the other hand, you find that Medallia has failed to prove any one of these elements, then you cannot find for Medallia on its counter-claim for breach of contract.

**Jury Instruction # 23**

EchoSpan claims that it is not bound by the Non-Disclosure Agreement because its consent was obtained by fraud.

To succeed on this defense, EchoSpan must prove all of the following by a preponderance of the evidence:

1. That Medallia represented that it was interested in acquiring EchoSpan;

2. That Medallia knew that the representation was not true;

3. That Medallia made the representation to persuade EchoSpan to agree to the contract;

4. That EchoSpan reasonably relied on this representation; and

5. That EchoSpan would not have agreed to the Non-Disclosure Agreement if it had known that the representation was not true.

If you decide that EchoSpan has proved all of the above, EchoSpan is not bound by the Non-Disclosure Agreement.

**Jury Instruction # 24**

It is my duty to instruct you about the measure of damages. By instructing you on damages, I do not mean to suggest for which party your verdict should be rendered.

If you decide that EchoSpan has proved its claims against Medallia, then you also must decide how much money will reasonably compensate them for the harm. It is for you to determine what damages, if any, have been proven. Your award(s) must be based upon evidence and not upon speculation, guesswork, or conjecture.

In this case, you may award damages to compensate EchoSpan only if you find that Medallia acted willfully or wantonly or with gross negligence. This applies to EchoSpan's trade secrets and contract claims. Willful conduct is based on an actual intention to do harm. Wanton conduct is that which is so reckless or so charged with indifference to the consequences as to be equivalent in spirit to an actual intent to do harm. To act with gross negligence is to lack the diligence that even careless individuals are accustomed to exercising. Acting in any one of these three manners is sufficient. You do not need to find Medallia acted in all three manners.

United States District Court
Northern District of California

To award damages, EchoSpan must demonstrate that, but for Medallia's conduct, its alleged injury would not have occurred.  If you find that a third party was responsible for causing the damages, you cannot award damages against Medallia in this case.

**Jury Instruction # 25**

EchoSpan is seeking compensatory damages for Medallia's alleged trade secret misappropriation based on (1) actual loss and (2) unjust enrichment. Medallia was unjustly enriched if its misappropriation of EchoSpan's trade secrets caused Medallia to receive a benefit that they otherwise would not have achieved. Unjust enrichment does not occur, however, where the benefit would have been realized anyway. If you find EchoSpan proved Medallia was unjustly enriched in different ways, you may combine those amounts in your unjust enrichment award.

If you find Medallia misappropriated an Alleged Trade Secret and caused EchoSpan actual loss or was unjustly enriched, then you must decide whether EchoSpan has proven by a preponderance of the evidence a calculable dollar value for the unjust enrichment or actual loss. EchoSpan must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision for that Alleged Trade Secret. If you award damages for actual loss *and* unjust enrichment, the plaintiff may not recover unjust enrichment damages that are addressed in any award of actual loss for misappropriation. For example, EchoSpan cannot recover both lost profits and disgorgement of Medallia's unjust profits.

To decide the amount of actual loss, first determine the dollar value of the injury caused by the misappropriation. Then subtract from that amount plaintiff's reasonable expenses that it would have incurred had the misappropriation not occurred.

To decide the amount of any unjust enrichment, first determine the value of defendant's benefit that would not have been achieved except for their misappropriation. Then subtract from that amount defendants' reasonable expenses, including the value of the specific categories of expenses in evidence, such as labor for that Alleged Trade Secret.

**Jury Instruction # 26**

If you find Medallia is liable for damages for trade secret misappropriation, you will also be asked to decide if Medallia's conduct justifies an award of exemplary damages. The purpose of exemplary damages is to punish a wrongdoer for their harmful conduct and to discourage similar conduct in the future. To award exemplary damages, you must find:

1. One or more of EchoSpan's Alleged Trade Secrets are trade secrets;

2. Medallia improperly acquired or used EchoSpan's trade secrets;

3. Medallia's acquisition or use of EchoSpan's trade secrets harmed EchoSpan; and

4. EchoSpan proved by clear and convincing evidence that Medallia acted willfully and maliciously in acquiring or using EchoSpan's trade secrets.

If you find that exemplary damages are appropriate, you must use reason in setting the amount. Exemplary damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party. In considering the amount of any exemplary damages, consider the degree of reprehensibility of Medallia's conduct. You may determine an amount of exemplary damages up to two times the compensatory damages you awarded to EchoSpan.

I defined "Clear and Convincing Evidence" earlier in these instructions.

"Willfully" means that Medallia acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that Medallia acted with an intent to cause injury, or that Medallia's conduct was despicable and was done with a willful and knowing disregard for the rights of others.

"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. Medallia acted with knowing disregard

17

if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.

**Jury Instruction # 27**

If you find Medallia breached the Terms and Conditions, you must decide if EchoSpan is entitled to damages for breach of contract. Contract damages compensate EchoSpan for the loss which a fulfillment of the contract would have prevented or the breach of it entailed. EchoSpan as much as it is possible to do so with a monetary award, is to be placed in the position it would have been in had the contract been performed. Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from the breach and such as the parties contemplated when the contract was made as the probable result of the breach.

Remote or consequential damages are not allowed unless they can be traced solely to the breach of the contract or unless they may be computed exactly. To recover lost profits, EchoSpan must show any probable gain with great specificity as well as expenses incurred in realizing such profits. In short, the gross amount minus expenses equals the amount of recovery. Lost profits do not require mathematical certainty, but must be based on definite, certain and reasonable data.

**Jury Instruction # 28**

Any award for future economic damages must be for the present cash value of those damages. Present cash value means the sum of money needed now, which, when invested at a reasonable rate of return, will pay future damages at the times and in the amounts that you find the damages would have been received. The rate of return to be applied in determining present cash value should be the interest that can reasonably be expected from safe investments that can be made by a person of ordinary prudence, who has ordinary financial experience and skill. You should also consider decreases in the value of money that may be caused by future inflation.

**Jury Instruction # 29**

Additionally, if you find EchoSpan breached the Non-Disclosure Agreement, you may award nominal damages such as one dollar. You do not need to find EchoSpan acted willfully, wantonly, or with gross negligence to award nominal damages.

**Jury Instruction # 30**

You must not consider, or include as part of any award, attorney fees, or expenses that the parties incurred in bringing or defending this lawsuit.

**Jury Instruction # 31**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer or tablet will be available to you in the jury room.

Someone will instruct you on how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the courtroom deputy. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the courtroom deputy, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view in your note to the courtroom deputy.

If a technical problem or question requires hands-on maintenance or instruction, a technician may enter the jury room with the courtroom deputy present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any non-juror is in the jury room, the jury shall not deliberate. No juror may say anything to the technician or any non-juror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing computers in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

**Jury Instruction # 32**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous, meaning you must all agree.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Jury Instruction # 33**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the courtroom deputy signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the

case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**Jury Instruction # 34**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the courtroom deputy that you are ready to return to the courtroom.

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ECHOSPAN, INC.,

        Plaintiff,

    v.

MEDALLIA, INC.,

        Defendant.

Case No. 22-cv-01732-NC

**FINAL VERDICT FORM**

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    We, the jury, unanimously agree to the answers to the following questions and return them
under the instructions of this Court as our verdict in this case.

**Part One: EchoSpan's Claims for Misappropriation of Trade Secrets**

**Question 1:** Regarding **Alleged Trade Secret 1 – <u>The "Report Template Editor" Feature</u>**, please answer "Yes" or "No" to each of the following questions:

| | | |
|---|---|---|
| a. Did EchoSpan own this information at the time of the trial access? | Yes _____ | No _____ |
| b. Was this information secret at the time of the trial access? | Yes _____ | No _____ |
| c. Did this information have actual or potential independent economic value because it was secret? | Yes _____ | No _____ |
| d. Did EchoSpan make reasonable efforts under the circumstances to keep this information secret? | Yes _____ | No _____ |

*If you answered "No" to any part of Question 1, skip to Question 8.*
*If you answered "Yes" to all parts of Question 1, please answer the next question*:

**Question 2:** Was this information readily ascertainable through proper means?

Yes _____     No _____

*If you answered "Yes" to Question 2, skip to Question 8.*
*If you answered "No" to Question 2, please answer the next question:*

**Question 3:** Was this information generally known?

Yes _____     No _____

*If you answered "Yes" to Question 3, skip to Question 8.*
*If you answered "No" to Question 3, please answer the next question:*

**Question 4:** Did Medallia acquire or use this information by improper means?

Yes _____     No _____

*If you answered "No" to Question 4, skip to Question 8.*
*If you answered "Yes" to Question 4, please answer the next question:*

**Question 5:** Did Medallia act willfully or wantonly or with gross negligence in its acquisition or use of this information?

Yes _____     No _____

*If you answered "No" to Question 5, skip to Question 8.*
*If you answered "Yes" to Question 5, please answer Questions 6 and 7:*

**Question 6:** Did Medallia's acquisition or use of this information cause harm to EchoSpan?

Yes _____     No _____          *If yes*, in what amount: _____

**Question 7:** Did Medallia's acquisition or use of this information cause Medallia to be unjustly enriched?

Yes _____     No _____          *If yes*, in what amount: _____

**CONTINUE TO THE NEXT PAGE**

United States District Court
Northern District of California

**Question 8:** Regarding **Alleged Trade Secret 2 – <u>The Batch Reporting Technology</u>**, please answer "Yes" or "No" to each of the following questions:

| | | |
|---|---|---|
| a. Did EchoSpan own this information at the time of the trial access? | Yes _____ | No _____ |
| b. Was this information secret at the time of the trial access? | Yes _____ | No _____ |
| c. Did this information have actual or potential independent economic value because it was secret? | Yes _____ | No _____ |
| d. Did EchoSpan make reasonable efforts under the circumstances to keep this information secret? | Yes _____ | No _____ |

*If you answered "No" to any part of Question 8, skip to Question 15.*
*If you answered "Yes" to all parts of Question 8, please answer the next question*:

**Question 9:** Was this information readily ascertainable through proper means?

Yes _____        No _____

*If you answered "Yes" to Question 9, skip to Question 15.*
*If you answered "No" to Question 9, please answer the next question:*

**Question 10:** Was this information generally known?

Yes _____        No _____

*If you answered "Yes" to Question 10, skip to Question 15.*
*If you answered "No" to Question 10, please answer the next question:*

**Question 11:** Did Medallia acquire or use this information by improper means?

Yes _____        No _____

*If you answered "No" to Question 11, skip to Question 15.*
*If you answered "Yes" to Question 11, please answer the next question:*

**Question 12:** Did Medallia act willfully or wantonly or with gross negligence in its acquisition or use of this information?

Yes _____        No _____

*If you answered "No" to Question 11, skip to Question 15.*
*If you answered "Yes" to Question 11, please answer Questions 13 and 14:*

**Question 13:** Did Medallia's acquisition or use of this information cause harm to EchoSpan?

Yes _____        No _____                *If yes*, in what amount: _____

**Question 14:** Did Medallia's acquisition or use of this information cause Medallia to be unjustly enriched?

Yes _____        No _____                *If yes*, in what amount: _____

**CONTINUE TO THE NEXT PAGE**

**Question 15:** Regarding **Alleged Trade Secret 3 – <u>The "Legal Scan" Feature</u>**, please answer "Yes" or "No" to each of the following questions:

| | | |
|---|---|---|
| a. Did EchoSpan own this information at the time of the trial access? | Yes _____ | No _____ |
| b. Was this information secret at the time of the trial access? | Yes _____ | No _____ |
| c. Did this information have actual or potential independent economic value because it was secret? | Yes _____ | No _____ |
| d. Did EchoSpan make reasonable efforts under the circumstances to keep this information secret? | Yes _____ | No _____ |

*If you answered "No" to any part of Question 15, skip to Question 22.*
*If you answered "Yes" to all parts of Question 15, please answer the next question*:

**Question 16:** Was this information readily ascertainable through proper means?

        Yes _____      No _____

*If you answered "Yes" to Question 16, skip to Question 22.*
*If you answered "No" to Question 16, please answer the next question:*

**Question 17:** Was this information generally known?

        Yes _____      No _____

*If you answered "Yes" to Question 17, skip to Question 22.*
*If you answered "No" to Question 17, please answer the next question:*

**Question 18:** Did Medallia acquire or use this information by improper means?

        Yes _____      No _____

*If you answered "No" to Question 18, skip to Question 22.*
*If you answered "Yes" to Question 18, please answer the next question:*

**Question 19:** Did Medallia act willfully or wantonly or with gross negligence in its acquisition or use of this information?

        Yes _____      No _____

*If you answered "No" to Question 19, skip to Question 22.*
*If you answered "Yes" to Question 19, please answer Questions 20 and 21:*

**Question 20:** Did Medallia's acquisition or use of this information cause harm to EchoSpan?

        Yes _____     No _____        *If yes*, in what amount: _____

**Question 21:** Did Medallia's acquisition or use of this information cause Medallia to be unjustly enriched?

        Yes _____     No _____        *If yes*, in what amount: _____

**CONTINUE TO THE NEXT PAGE**

United States District Court
Northern District of California

**Question 22:** Regarding **Alleged Trade Secret 4 – <u>The Customization Options Available to Customers Regarding Selecting Raters</u>**, please answer "Yes" or "No" to each of the following questions:

| | |
|---|---|
| a. Did EchoSpan own this information at the time of the trial access? | Yes _____     No _____ |
| b. Was this information secret at the time of the trial access? | Yes _____     No _____ |
| c. Did this information have actual or potential independent economic value because it was secret? | Yes _____     No _____ |
| d. Did EchoSpan make reasonable efforts under the circumstances to keep this information secret? | Yes _____     No _____ |

*If you answered "No" to any part of Question 22, skip to Question 29.*
*If you answered "Yes" to all parts of Question 22, please answer the next question*:

**Question 23:** Was this information readily ascertainable through proper means?

　　　　Yes _____     No _____

*If you answered "Yes" to Question 23, skip to Question 29.*
*If you answered "No" to Question 23, please answer the next question:*

**Question 24:** Was this information generally known?

　　　　Yes _____     No _____

*If you answered "Yes" to Question 24, skip to Question 29.*
*If you answered "No" to Question 24, please answer the next question:*

**Question 25:** Did Medallia acquire or use this information by improper means?

　　　　Yes _____     No _____

*If you answered "No" to Question 25, skip to Question 29.*
*If you answered "Yes" to Question 25, please answer the next question:*

**Question 26:** Did Medallia act willfully or wantonly or with gross negligence in its acquisition or use of this information?

　　　　Yes _____     No _____

*If you answered "No" to Question 26, skip to Question 29.*
*If you answered "Yes" to Question 26, please answer Questions 27 and 28:*

**Question 27:** Did Medallia's acquisition or use of this information cause harm to EchoSpan?

　　　Yes _____     No _____          *If yes*, in what amount: _____

**Question 28:** Did Medallia's acquisition or use of this information cause Medallia to be unjustly enriched?

　　　Yes _____     No _____          *If yes*, in what amount: _____

**CONTINUE TO THE NEXT PAGE**

**Question 29:** Regarding **Alleged Trade Secret 6 – <u>The Design and Organization of the User Interface for Managing Projects</u>**, please answer please answer "Yes" or "No" to each of the following questions:

| | |
|---|---|
| a. Did EchoSpan own this information at the time of the trial access? | Yes _____     No _____ |
| b. Was this information secret at the time of the trial access? | Yes _____     No _____ |
| c. Did this information have actual or potential independent economic value because it was secret? | Yes _____     No _____ |
| d. Did EchoSpan make reasonable efforts under the circumstances to keep this information secret? | Yes _____     No _____ |

*If you answered "No" to any part of Question 29, skip to Question 36.*
*If you answered "Yes" to all parts of Question 29, please answer the next question*:

**Question 30:** Was this information readily ascertainable through proper means?

          Yes _____      No _____
*If you answered "Yes" to Question 30, skip to Question 36.*
*If you answered "No" to Question 30, please answer the next question:*

**Question 31:** Was this information generally known?

          Yes _____      No _____
*If you answered "Yes" to Question 31, skip to Question 36.*
*If you answered "No" to Question 31, please answer the next question:*

**Question 32:** Did Medallia acquire or use this information by improper means?

          Yes _____      No _____
*If you answered "No" to Question 32, skip to Question 36.*
*If you answered "Yes" to Question 32, please answer the next question:*

**Question 33:** Did Medallia act willfully or wantonly or with gross negligence in its acquisition or use of this information?

          Yes _____      No _____
*If you answered "No" to Question 33, skip to Question 36.*
*If you answered "Yes" to Question 33, please answer Questions 34 and 35:*

**Question 34:** Did Medallia's acquisition or use of this information cause harm to EchoSpan?

          Yes _____      No _____               *If yes*, in what amount: _____

**Question 35:** Did Medallia's acquisition or use of this information cause Medallia to be unjustly enriched?

          Yes _____      No _____               *If yes*, in what amount: _____

**CONTINUE TO THE NEXT PAGE**

**Question 36:** Regarding **Alleged Trade Secret 7 – <u>The "Project Autopilot" Feature</u>**, please answer "Yes" or "No" to each of the following questions:

| | | |
|---|---|---|
| a. Did EchoSpan own this information at the time of the trial access? | Yes _____ | No _____ |
| b. Was this information secret at the time of the trial access? | Yes _____ | No _____ |
| c. Did this information have actual or potential independent economic value because it was secret? | Yes _____ | No _____ |
| d. Did EchoSpan make reasonable efforts under the circumstances to keep this information secret? | Yes _____ | No _____ |

*If you answered "No" to any part of Question 36, skip to Question 43.*
*If you answered "Yes" to all parts of Question 36, please answer the next question:*

**Question 37:** Was this information readily ascertainable through proper means?

          Yes _____          No _____

*If you answered "Yes" to Question 37, skip to Question 43.*
*If you answered "No" to Question 37, please answer the next question:*

**Question 38:** Was this information generally known?

          Yes _____          No _____

*If you answered "Yes" to Question 38, skip to Question 43.*
*If you answered "No" to Question 38, please answer the next question:*

**Question 39:** Did Medallia acquire or use this information by improper means?

          Yes _____          No _____

*If you answered "No" to Question 39, skip to Question 43.*
*If you answered "Yes" to Question 39, please answer the next question:*

**Question 40:** Did Medallia act willfully or wantonly or with gross negligence in its acquisition or use of this information?

          Yes _____          No _____

*If you answered "No" to Question 40, skip to Question 43.*
*If you answered "Yes" to Question 40, please answer Questions 41 and 42:*

**Question 41:** Did Medallia's acquisition or use of this information cause harm to EchoSpan?

          Yes _____          No _____          *If yes*, in what amount: _____

**Question 42:** Did Medallia's acquisition or use of this information cause Medallia to be unjustly enriched?

          Yes _____          No _____          *If yes*, in what amount: _____

**Question 43:** Regarding **Alleged Trade Secret 8 – <u>The "Coaching Opportunities Analyzer"</u>** <u>**Feature**</u>, please answer "Yes" or "No" to each of the following questions:

| | |
|---|---|
| a. Did EchoSpan own this information at the time of the trial access? | Yes \_\_\_\_      No \_\_\_\_ |
| b. Was this information secret at the time of the trial access? | Yes \_\_\_\_      No \_\_\_\_ |
| c. Did this information have actual or potential independent economic value because it was secret? | Yes \_\_\_\_      No \_\_\_\_ |
| d. Did EchoSpan make reasonable efforts under the circumstances to keep this information secret? | Yes \_\_\_\_      No \_\_\_\_ |

*If you answered "No" to any part of Question 43, skip to Question 50.*
*If you answered "Yes" to all parts of Question 43, please answer the next question*:

**Question 44:** Was this information readily ascertainable through proper means?

        Yes \_\_\_\_      No \_\_\_\_

*If you answered "Yes" to Question 44, skip to Question 50.*
*If you answered "No" to Question 44, please answer the next question:*

**Question 45:** Was this information generally known?

        Yes \_\_\_\_      No \_\_\_\_

*If you answered "Yes" to Question 45, skip to Question 50.*
*If you answered "No" to Question 45, please answer the next question:*

**Question 46:** Did Medallia acquire or use this information by improper means?

        Yes \_\_\_\_      No \_\_\_\_

*If you answered "No" to Question 46, skip to Question 50.*
*If you answered "Yes" to Question 46, please answer the next question:*

**Question 47:** Did Medallia act willfully or wantonly or with gross negligence in its acquisition or use of this information?

        Yes \_\_\_\_      No \_\_\_\_

*If you answered "No" to Question 47, skip to Question 50.*
*If you answered "Yes" to Question 47, please answer Questions 48 and 49:*

**Question 48:** Did Medallia's acquisition or use of this information cause harm to EchoSpan?

      Yes \_\_\_\_      No \_\_\_\_          *If yes*, in what amount: _____

**Question 49:** Did Medallia's acquisition or use of this information cause Medallia to be unjustly enriched?

      Yes \_\_\_\_      No \_\_\_\_          *If yes*, in what amount: _____

United States District Court
Northern District of California

8      **CONTINUE TO THE NEXT PAGE**

**Question 50:** If you answered "Yes" to <u>any</u> of **Questions 6, 13, 20, 27, 34, 41, or 48** please add the total amount of damages you awarded EchoSpan for the harm caused by Medallia's improper acquisition or use of EchoSpan's trade secret(s).

       Total: $_____

**Question 51:** If you answered "Yes" to <u>any</u> of **Questions 7, 14, 21, 28, 35, 42, or 49** please add the total amount of unjust enrichment you found Medallia received through improper acquisition or use of EchoSpan's trade secret(s).

       Total: $_____

**Question 52:** If you filled in an amount for **Questions 50 or 51** do you find by clear and convincing evidence that Medallia's improper acquisition or use of the EchoSpan's trade secret(s) was willful and malicious?

       Yes _____       No _____

       *If yes*, do you award EchoSpan exemplary damages? Yes _____     No _____

       *If yes*, in what amount: _____

### <u>Part Two: EchoSpan's Breach of Contract Claim</u>

**Question 1:** Did Medallia breach the Terms and Conditions?

       Yes _____       No _____

*If you answered "No" to Question 1, skip to Part Three.*
*If you answered "Yes" to Question 1, please answer the following question*:

**Question 2:** Was Medallia's breach willful or wanton or grossly negligence?

       Yes _____       No _____
*If you answered "No" to Question 2, skip to Part Three.*
*If you answered "Yes" to Question 2, please answer the following question:*

**Question 3:** Did Medallia's breach of the Terms and Conditions harm EchoSpan?

       Yes _____       No _____

       *If yes*, in what amount: _____

**Part Three: Medallia's Counter-Claim**

**Question 1:** Is EchoSpan bound by the Non-Disclosure Agreement?

Yes _____        No _____

*If you answered "No" to Question 1, please proceed to the Conclusion.*
*If you answered "Yes" to Question 1, please answer the following question*:

**Question 2:** Did EchoSpan breach the Non-Disclosure Agreement?

Yes _____        No _____

*If yes*, do you award Medallia nominal damages? Yes _____   No _____

*If yes*, in what amount: _____

**Conclusion**

You have now reached the end of the verdict form and should review it to ensure it accurately reflects your unanimous determinations. The Presiding Juror should then sign and date the verdict form in the space below and notify the Courtroom Deputy.

Dated: _____, 2023        By:_____

Presiding Juror