LEWIS & LLEWELLYN LLP
Evangeline A.Z. Burbidge (CA Bar No. 266966)
eburbidge@lewisllewellyn.com
Zachary C. Flood (CA Bar No. 313616)
zflood@lewisllewellyn.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 800-0590

COUNCILL, GUNNEMANN & CHALLY LLC
Jonathan R. Chally (GA Bar No.141392); *Pro Hac Vice*
jchally@cgc-law.com
Joshua P. Gunnemann (GA Bar No. 152250); *Pro Hac Vice*
jgunnemann@cgc-law.com
Jennifer R. Virostko (GA Bar No. 959286); *Pro Hac Vice*
jvirostko@cgc-law.com
1201 W. Peachtree Street NW, Suite 2613
Atlanta, Georgia 30309
Telephone: (404) 407-5250

Attorneys for Plaintiff/Counter-Defendant
ECHOSPAN, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECHOSPAN, INC., | Case No. 5:22-cv-01732-NC |
| Plaintiff/Counter-Defendant, | **REPLY IN SUPPORT OF ECHOSPAN INC.'S MOTION FOR A NEW TRIAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59** |
| v. | |
| MEDALLIA, INC., | Date:     September 11, 2024 |
| Defendant/Counter-Plaintiff. | Time:     11:00 a.m. |
| | Ctrm:     5 – 4th Floor |
| | Judge:    Hon. Nathanael Cousins |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   MEDALLIA'S ARGUMENT RELIES ON ITS UNFOUNDED CONJECTURE ABOUT
      THE JURY'S DECISION. ................................................................................... 1

III.  A NEW TRIAL IS THE APPROPRIATE REMEDY. ........................................... 4

      A.    Granting a New Trial on Damages Is Within the Court's Discretion. ........................ 4

      B.    Dynamic Shifts During Trial Warrant a New Trial On Damages. ............................. 7

            1.    EchoSpan's Definition of Trade Secret 9 Controls. ........................................ 7

            2.    Medallia Is Incorrect that There Was No Unfair Surprise Concerning
                  Apportionment. ........................................................................................... 8

      C.    A New Trial Would Be Efficient. ..................................................................... 10

      D.    In The Alternative, An Injunction is Appropriate. ................................................ 10

IV.   THIS IS ECHOSPAN'S FIRST REQUEST FOR RELIEF FROM THE AMENDED
      JUDGMENT ........................................................................................................ 11

V.    CONCLUSION ................................................................................................... 13

ECHOSPAN'S REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL
Case No. 5:22-CV-01732-NC

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

*2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    399 F. Supp. 2d 1064 (N.D. Cal. 2005)...........................................................6, 10

*ATS Products Inc. v. Ghiorso*,
    2012 WL 253315 (N.D. Cal. Jan. 26, 2012)...........................................................8

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,
    331 F. Supp. 3d 977 (N.D. Cal. 2018)...................................................................9

*Bos. Sci. Corp. v. Johnson & Johnson*,
    550 F. Supp. 2d 1102 (N.D. Cal. 2008).................................................................6

*Byars v. Hot Topic, Inc.*,
    656 F. Supp. 3d 1051 (C.D. Cal. 2023)................................................................6

*Cornist v. Richland Par. Sch. Bd.*,
    479 F.2d 37 (5th Cir. 1973)..................................................................................13

*Devex Corp. v. Gen. Motors Corp.*,
    667 F.2d 347 (3d Cir. 1981)....................................................................................6

*Henry Hope X-Ray Prod., Inc. v. Marron Carrel, Inc.*,
    674 F.2d 1336 (9th Cir. 1982)...............................................................................11

*Hologic, Inc. v. Minerva Surgical, Inc.*,
    957 F.3d 1256 (Fed. Cir. 2020).............................................................................5

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020)..................................................................................7

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co., Harris Press & Shear Div.*,
    895 F.2d 1403 (Fed. Cir. 1990)............................................................................5

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009).............................................................................5

*McElrath v. Georgia*,
    601 U.S. 87 (2024)...........................................................................................2, 3

*Paterson v. California Dep't of Gen. Servs.*,
    2008 WL 4286579 (E.D. Cal. Sept. 17, 2008)....................................................13

*Versata Software, Inc. v. Ford Motor Co.*,
    2023 WL 3175427 (E.D. Mich. May 1, 2023)......................................................6

ECHOSPAN'S REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL
Case No. 5:22-CV-01732-NC

*Walker v. Bain*,
    257 F.3d 660 (6th Cir. 2001) ................................................................................. 13

*WeRide Corp. v. Kun Huang*,
    379 F. Supp. 3d 834 (N.D. Cal. 2019) ................................................................... 11

*Westmont Tractor Co. v. Touche Ross & Co.*,
    110 F.R.D. 407 (D. Mont. 1986) ............................................................................. 2

**STATUTES**

35 U.S.C. § 284 ................................................................................................................ 6
Cal. Civ. Pro. § 59 .................................................................................................... 1, 13

**FEDERAL RULES**

Federal Rules of Civil Procedure Rule 50(d) ............................................................... 12
Federal Rules of Civil Procedure Rule 59(e) ............................................................... 12

ECHOSPAN'S REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL
Case No. 5:22-CV-01732-NC

## I.     INTRODUCTION

Medallia *willfully stole* a much smaller competitor's intellectual property. It did so to satisfy its largest customer when its own internal resources could not. Despite this, Medallia is currently subject to no immediate consequence or penalty. This is unfair. Our legal system provides a simple procedural mechanism that is routinely applied—in this exact situation—to avoid this result: a new trial on damages. The Court can grant EchoSpan a short opportunity to develop and then present the evidence that the Court determined was lacking, a decision the Court reached only after several unexpected and unforeseeable events occurred during and even after trial. These events—the adoption of a novel definition of Trade Secret 9, the imposition of an apportionment requirement, and the demand for expert evidence on a specific amount of apportioned damages (and the related rejection of fact testimony on this point)—merit granting a limited trial on the subject of apportioned damages.

Medallia's opposition to this request only highlights the need for this relief. Medallia, once again, doubles down on its complete and unmitigated misrepresentation of the record. Medallia repeatedly asserts that the jury awarded **_all_** of the unjust enrichment damages to the single trade secret that the jury found Medallia to have misappropriated. Dkt. 521 at 11, 26. That is not true.

Court's commonly grant new trials on damages after finding apportionment issues in a jury's damages award.  That remedy is routine and procedurally appropriate.  The Court has clear authority to grant it.  And it is the just result here.

## II.     MEDALLIA'S ARGUMENT RELIES ON ITS UNFOUNDED CONJECTURE ABOUT THE JURY'S DECISION.

Medallia's recitation of the facts and background, and the premise upon which its apportionment argument rests, is incorrect in at least one glaring aspect: it claims that the jury awarded EchoSpan the unjust enrichment damages in the "full amount" of the head start and avoided costs that EchoSpan sought. Dkt. 521 at 11, 26. Medallia claims that even though it misappropriated "only" one trade secret, EchoSpan received 100% of the damages it sought for all trade secrets. That is not true.

The jury heard testimony of three different forms of unjust enrichment damages, totaling $23,366,033. Of course, the jury verdict is silent as to what type of unjust enrichment damages the

ECHOSPAN'S REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL
Case No. 5:22-cv-01732-nc

jury chose to award. But the jury had *three* sums to select from:

- $11,574,146 in disgorgement of wrongfully gotten gains (Dkt. 510 at 8));

- $8,916,930 for the head start in accessing the market (*id.*); and/or

- $2,874,957 in saved costs (*id.* at 9).

The sum of these three amounts is $23,366,033. The jury did *not* award EchoSpan, $23.3 million. Instead, the jury ultimately awarded EchoSpan $11.7 in unjust enrichment damages, an amount that is precisely half (rounded up to the nearest hundred thousand dollars) of the total unjust enrichment award.[1]

The jury operates within a "black box," and no inquiry was (or could have been) made into its deliberations. *See McElrath v. Georgia*, 601 U.S. 87, 97 (2024) ("[O]ur cases prohibit *any* speculation about the reasons for a jury's verdict . . . ") (emphasis original). This rule exists "because it is impossible for a court to be certain about the ground for the verdict without improperly delving into the jurors' deliberations." *Id*; see also *Westmont Tractor Co. v. Touche Ross & Co.*, 110 F.R.D. 407, 409 (D. Mont. 1986) ("It is equally clear that once a verdict has been returned neither the Court nor the parties should inquire into the reasoning process or motivation behind the verdict") (maintaining seal of juror mathematical calculations on verdict form).

There is *no way* to determine how the jury reached its $11.7 million verdict or which and how much of these three types of unjust enrichment it awarded. The possibilities are, quite literally, endless: the jury could have awarded half of each of the three types of unjust enrichment damages (this amount equals $11,685,538, which, if correctly rounded to the hundred thousands, is $11.7 million); or the full disgorgement amount and an additional $125,000 of head start or saved costs; or the full amount of head start and $2.8 million of disgorgement; or $5 million in disgorgement, $4

---

[1] Medallia claims that this amount equates to the sum of EchoSpan's head start and saved cost damages "rounded." Dkt. 521 at 11. But, this is neither factually nor mathematically true. The sum of head start and saved cost damages amounts offered by Mr. Ratner equals $11,791,887, and, as any elementary school math book will explain, if the number being rounded is followed by a 5, 6, 7, 8, or 9, the preceding number is rounded *up*. Thus, rounding the sum of the head start and saved costs damages to the nearest hundred thousands, as Medallia suggests the jury did, would be $11.8 million, not the $11.7 million that the jury awarded. IT is more likely, and mathematically correct that any rounding addressed half of the *total* unjust enrichment award, not the two components that Medallia identified. Half of $23,366,033 is $11,683,016.50, properly rounded up to $11,700,000— the jury's compensatory award.

million in head start, and $2.7 million in saved costs; or any number of other combinations. Neither Medallia, nor EchoSpan, nor the Court can determine—beyond mere speculation—what type of unjust enrichment damages the jury awarded.

Again, Medallia's entire endeavor in this regard—speculating about the jury's motivation in awarding EchoSpan $11.7 million—is impermissible. *McElrath*, 601 U.S. at 97. Even more, the contention that the jury awarded all of the unjust enrichment damages to EchoSpan is demonstrably wrong. Confronted with its misrepresentation of the factual record, all Medallia can offer is a footnote in its opposition brief. Dkt. 521 at 11 and n.3. There, Medallia appears to contend that because the jury did not award lost profit damages (presumably because the jury concluded that Medallia's wrongdoing did not cause EchoSpan to lose the customer relationship and lost profits associated with the customer at trial), the jury could not have awarded Medallia's profit be disgorged as an unjust enrichment remedy. *Id.* The opposite is true: *even if* EchoSpan would have lost the Bank of America relationship without the trade secret theft, Medallia *was still unjustly enriched* by its ill-gotten proceeds from Bank of America. There was clear testimony on this point; Mr. Ratner informed the jury:

> And even if [Bank of America was] looking to make a change [from EchoSpan], and that's why there's disgorgement in trade secrets, let's assume that they were looking to make a change, and they got the benefit of the EchoSpan trade secrets, as you all know, the trade secret statute allows the plaintiff to recover and disgorge those profits to the extent that those profits are earned with the benefit of the trade secrets, *even if they were going to move, the disgorgement is allowed to be claimed by the plaintiff.*

Trial Tr. at 767:25-768:8 (emphasis added). The jury was *not* under the same misimpression that Medallia now seems to be: the jury knew that disgorgement of Medallia's unjust enrichment from its Bank of America profit was available whether or not Bank of America intended to continue its relationship with EchoSpan.

Leaving Medallia's improper conjecture into the jury's reasoning aside, the only way to understand the end-result in this case as embodied in the Amended Judgment—that is, that the jury had no basis to apportion some (not all) of the unjust enrichment damages EchoSpan sought—is to conclude that the fact evidence supporting this apportioned award was not sufficient. Because there was lay witness testimony supporting apportionment, one can reach that conclusion only by

1   requiring precise expert testimony of a specific apportioned amount. After all, as the Court

2   recognized, there *was* fact evidence from which the jury could determine the misappropriated trade

3   secret to have been a significant (perhaps half, or even more than half) driver of the value of the

4   system Medallia so desperately needed. Dkt. 500 at 15.  But, the Court never expressed an

5   expectation of this precise expert testimony previously. While Medallia asked the Court to adopt

6   that rule in its *Daubert* motion regarding EchoSpan's damages expert, the Court did not accept that

7   invitation at that time. It was only with the Court's 50(b) ruling that the Court imposed this new

8   burden. That is among the remarkable surprises that, at this point, only a new trial can remedy.

9   **III.    A NEW TRIAL IS THE APPROPRIATE REMEDY.**

10          In light of the fact that the Court has overturned the jury's already-apportioned damages

11  award, it is clear that the Court's ruling: (1) retroactively imposed a legal apportionment

12  requirement that the Court had not previously held would apply; (2) disregarded evidence that fact

13  witnesses and experts said would justify an apportioned jury award and thereby demanded precise

14  expert testimony of an apportioned damages amount, despite fact testimony telling the jury how that

15  apportionment could be determined; and (3) upended the orderly trial the Court had previously

16  overseen. A new trial is not only procedurally appropriate—it is necessary.

17          **A.  Granting a New Trial on Damages Is Within the Court's Discretion.**

18          While Medallia insists that the Court *should not* grant EchoSpan a new trial, it never says

19  that the Court *cannot* grant EchoSpan a new trial. That is because the Court can, and, in similar

20  situations, other courts usually have. *See* Dkt. 510 at 11-12. This Court has recognized that Medallia

21  willfully and maliciously misappropriated EchoSpan's Trade Secret 6. Dkt 502. But EchoSpan is

22  without any remedy for the misappropriation. *Id.* Put differently: Medallia got away with theft. The

23  Court should use its discretion to grant a new trial on damages.

24          Tellingly, Medallia has *no* substantive response to the long list of cases cited in EchoSpan's

25  Motion where court after court after court granted a new trial on damages following its

26  determination that plaintiff had failed to provide adequate apportionment evidence. Nor does

27  Medallia deny that this Court has authority to do the same. Instead, Medallia attempts to distinguish

28  those cases by pointing out that these are patent cases rather than trade secret theft cases. This

1  argument does not withstand basic scrutiny.

2      First, many elements of trade secret law are borrowed directly from patent law, particularly

3  in this District and particularly in the area of damages apportionment. Second, and more

4  definitively, courts have expressly considered and ***rejected*** the exact argument Medallia makes here

5  to suggest that patent cases are fundamentally different for purposes of new trials on damages.

6      As an initial matter, courts frequently borrow patent law concepts in the realm of trade

7  secrets. The primary case Medallia relied on in its JMOL briefing—*O2 Micro*—was a combined

8  trade secret ***and*** patent case. Indeed, during oral argument regarding apportionment issues at trial,

9  the Court expressly referred to Medallia's relevant apportionment arguments as "coming from a

10  patent case." Trial Tr. at 1009:18-19.

11      Here, the Court should apply what Medallia acknowledges is the "***general rule requiring a***

12  ***new trial***" in patent cases following the overturning of a damages award based on apportionment

13  issues. Opp. at 14 (quoting *Hologic, Inc. v. Minerva Surgical, Inc.*, 957 F.3d 1256, 1271 (Fed. Cir.

14  2020) (emphasis added). Medallia argues this "general rule" does not apply in the trade secret

15  context because it is grounded solely in Section 284 of the Patent Act, which requires the award of

16  no less than a reasonable royalty for the infringement. Opp. at 13-14. Thus, according to Medallia,

17  "[i]n the patent context, once a patentee proves infringement, a court simply cannot award zero

18  damages as a matter of law" but is statutorily required to order a new trial on damages. *Id*. at 14.

19  While Medallia deserves credit for this creative attempt to escape the "general rule" requiring a new

20  trial in cases of apportionment issues, it fails to mention that courts have repeatedly considered and

21  rejected this exact argument.

22      While Section 284 of the Patent Act creates a floor for damages in the form of a reasonably

23  royalty—as opposed to lost profits—it is still black letter law that a patent plaintiff bears the burden

24  of proving damages as an element of their case-in-chief. *Lucent Techs., Inc. v. Gateway, Inc.*, 580

25  F.3d 1301, 1324 (Fed. Cir. 2009) ("The burden of proving damages falls on the patentee."). As a

26  result, courts have expressly rejected the claim that they ***must*** award damages following a finding of

27  infringement—the exact argument Medallia makes here. *Lindemann Maschinenfabrik GmbH v. Am.*

28  *Hoist & Derrick Co., Harris Press & Shear Div.*, 895 F.2d 1403, 1407 (Fed. Cir. 1990) ("The statute

[35 U.S.C. § 284] requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute.") (internal citations omitted); *Devex Corp. v. Gen. Motors Corp.*, 667 F.2d 347, 363 (3d Cir. 1981), *aff'd*, 461 U.S. 648 (1983) (same); *Bos. Sci. Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1120 (N.D. Cal. 2008) (considering and rejecting the argument that Section 284 required the court to grant a new trial on damages following infringement verdict where plaintiff did not provide evidence regarding the proper amount of a royalty award).

In contrast to the "general rule" governing this issue in the patent context, Medallia suggests that the lack of a new trial on damages in *O2 Micro* should guide precedent in trade secret cases following the overturning of a jury verdict based on apportionment issues. Opp. at 12-13. But Medallia ignores the fact that the Plaintiff in *O2 Micro* **never moved for a new trial** on damages following the apportionment decision, likely because the court still awarded damages in the form of a reasonable royalty and exemplary damages in that case. *See 02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1088 (N.D. Cal. 2005) ("The Court GRANTS judgment as a matter of law that the award of unjust enrichment damages was not based on evidence presented at trial, but . . . GRANTS O2 Micro's request for a reasonable royalty and exemplary damages").[2] "It is axiomatic that cases are not authority for propositions not considered." *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1070 (C.D. Cal. 2023).

Although Medallia claims that because of the claimed deficiency in EchoSpan's evidence, EchoSpan should be left without any remedy or recourse, Dkt. 521 at 17-18, the judicial system is designed to avoid such an unjust outcome. Unlike EchoSpan, which is left without any remedy, the plaintiff in *O2 Micro* was granted a substantial remedy in spite of the judgment as a matter of law reversing the unjust enrichment award. Even after JMOL, the court still awarded the plaintiff $900,000 in a reasonable royalty and twice that amount (an additional $1.8 million) in exemplary damages. *See* Ex. A, Order, *02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, No. C 00-04071 CW

---

[2] The only other case Medallia cites in support of this argument is *Versata Software, Inc. v. Ford Motor Co.*, No. 15-11264, 2023 WL 3175427, at *16–19 (E.D. Mich. May 1, 2023). Yet that out-of-circuit case is currently pending appeal on this exact question. *Versata Software, Inc. v. Ford Motor Co.*, No. 15-10628 (E.D. Mich.), Dkt. 1122 (Federal Circuit Notice of Appeal).

(March 9, 2005). The court also awarded an additional $321,363 in interest. *Id*.[3] Thus, even in *O2 Micro*, the plaintiff recovered over $3 million. In stark contrast, leaving EchoSpan with no remedy for Medallia's *willful and malicious misappropriation* is not the proper outcome of this litigation. A new trial on the limited issue of damages is the fair, appropriate, and necessary remedy.

### B. Dynamic Shifts During Trial Warrant a New Trial On Damages.

Beyond its attempts to distinguish the clear authority supporting the grant of new damages trials in light of apportionment issues, Medallia also attempts to minimize the dynamic changes and surprises that occurred throughout trial. These arguments similarly do not withstand scrutiny.

### 1. EchoSpan's Definition of Trade Secret 9 Controls.

Medallia is incorrect that EchoSpan's definition of Trade Secret 9 is a "reinterpretation." Dkt. 521 at 21-23. But it is axiomatic that a plaintiff in a trade secret case gets to define its trade secrets. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) (plaintiffs must identify their trade secrets). Medallia cannot usurp this role and redefine Trade Secret 9 as the compilation of "*every*" feature of the other eight trade secrets. EchoSpan's definition of Trade Secret 9 does not use the word "every." Instead, EchoSpan described Trade Secret 9 as the compilation of the features of the 360 system as described in the remaining 8 trade secrets. Dkt. 111-6.[4] Indeed, EchoSpan raised this incorrect interpretation of Trade Secret 9 at trial. *See* Trial Tr. 959:15-22 ("We understood … that the compilation trade secret was *any or all* …")(emphasis added). Medallia was well aware that Trade Secret 5 was *not part* of the 360 system and, thus, was *not compiled* with the remaining trade secrets; it was on this basis they Medallia moved for judgment as a matter of law on Trade Secret 5. *See* Dkt. 510 at 14; Trial Tr. 844:9-17 (Medallia arguing that "[Trade Secret 5] was not acquired through the free trial"). Indeed, it was precisely *because* Trade Secret 5 was disparate from the 360 system—and the remaining trade secrets—that

---

[3] The Court determined that there was not evidence introduced at trial sufficient to determine a reasonable royalty for Medallia's misappropriation. Dkt. 423 at 6. While EchoSpan believes a trial to determine the amount of unjust enrichment associate with Trade Secret 6 is the most appropriate course of action, in the alternative, EchoSpan seeks a trial on the amount of a reasonable royalty it is entitled due to Medallia's misappropriation.

[4] Notably, Medallia does not argue that the definition of Trade Secret 9 lacked particularity, only that EchoSpan's definition of its own trade secret is incorrect.

the Court ruled in Medallia's favor on it. Dkt. 378 at 3-4.[5]  Medallia cannot now feign confusion as

to whether Trade Secret 5 was compiled into the 360 system or included with the remaining trade

secrets in Trade Secret 9. It was not. Allowing Medallia—the *defendant*—to redefine plaintiff

EchoSpan's trade secrets midway through trial (or at any point) injected unfair surprise into the

proceedings.

### 2. Medallia Is Incorrect that There Was No Unfair Surprise Concerning Apportionment.

Medallia next argues that because *it* raised certain arguments throughout this litigation,

including as pertaining to apportionment, that EchoSpan was on "notice" of the future events of this

action. Dkt. 521 at 8, 23-24. But it is the Court's *determination*, not Medallia's *urging*, that controls.

Indeed, Medallia took many positions throughout this litigation, many of which were ultimately

rejected.[6] Medallia's adoption of an incorrect position, no matter how often it repeats it, does not

provide any notice to EchoSpan of what the law actually *is.* Such a determination may only be made

by the Court. Despite Medallia's attempts to paint apportionment law as settled, the topic is murky

at best. The Ninth Circuit has not addressed the issue and *O2 Micro* is not controlling authority in

this district (Dkt. 500 at 15); indeed, other district court cases in this district reach an opposite

conclusion than the *O2 Micro* court. *See* Dkt. 489-30 at 20 (citing *ATS Products Inc. v. Ghiorso*, No.

---

[5] Medallia argues that the continued inclusion of Trade Secret 9 would not have been outcome determinative because apportionment would still be required even if the Court only granted judgment as a matter of law as to Trade Secret 5. Dkt. 521 at 21. Mr. Ratner, however, did not attribute any value to Trade Secret 5; he assigned value only to the 360 system *as a whole*, and Trade Secret 5 was not part of the system. Trial Tr. 788:11-789:5 ("In software as a service, *all these things are functioning together*, and *you look at it as a basket*. How much of the value is derived from the report editor? How much of the value is coming from the legal editor? That would be difficult to do. You wouldn't be able to sell those individually. So none of EchoSpan's clients are saying ["]I only want to buy the legal editor["]? What is that worth? ["]I only want to buy the report editor["]? *It's a basket of things together*.") (emphasis added). There was ample evidence that Medallia accessed and misappropriated the entire 360 system, and, had the jury been able to consider Trade Secret 9, it may have determined that Medallia had misappropriated the combination of the *entire* system.

[6] To wit: Medallia argued that it did not misappropriate any trade secrets, which, of course, was not legally or factually correct. Dkt. 502. Indeed, Medallia continues to advance baseless arguments even in its Response Brief. Despite that both the jury and the Court have *repeatedly* determined that Trade Secret 6 was defined both consistently and with particularity, Dkt. 389 at 7; Dkt 500 at 8-9, Medallia continues to claim that EchoSpan's description of the trade secret was vague, "something completely different from how it was previously described," or "recast" Dkt. 521 at 10. Medallia's assertion of an argument is not "notice" of what the law *is*, only of what Medallia *wishes* it to be.

1  C10-4880 BZ, 2012 WL 253315, at *1 (N.D. Cal. Jan. 26, 2012)); *BladeRoom Grp. Ltd. v. Emerson*

2  *Elec. Co.*, 331 F. Supp. 3d 977, 989 (N.D. Cal. 2018), *vacated and remanded on other grounds*, 20

3  F.4th 1231 (9th Cir. 2021); *see also* Dkt. 510 at 18.[7]

4        The unfair surprise arises precisely *because* the Court had, until after trial, rejected

5  Medallia's claims that apportionment was required. In rejecting Medallia's *Daubert* challenge to

6  Mr. Ratner's opinion, the Court addressed three of Medallia's arguments: the unreliability of lost

7  profits damages; the failure to apportion both as among trade secrets and as between infringing and

8  non-infringing portions of the system; and the speculative nature of his head start calculations. Dkt.

9  323 at 3. As to *each* of these purported infirmities, the Court directed that "all three asserted grounds

10  against Ratner can be pursued through vigorous cross-examination, competing evidence, and

11  argument." *Id.* The Court thus indicated that any lack of apportionment was *a jury issue*, not a

12  criticism of the sufficiency of the evidence. Indeed, even after granting Medallia's mid-trial motion

13  concerning Trade Secrets 5 and 9, the Court did not indicate that apportionment would be required.

14  Instead, as to apportionment, the Court indicated that an appropriate instruction could guide the jury:

15          There is an issue which I'm going to defer because I think *it's more of a jury verdict*

16          *and instruction issue*, which is the apportionment of damages among the trade secrets
        versus the model [which was not apportioned].

17  Trial Tr. 855:2-5. Indeed, as the Court suggested, the jury was appropriately instructed on how to

18  calculate unjust enrichment damages, and it considered the evidence and apportioned half the

19  claimed unjust enrichment damages to Trade Secret 6, following the instructions of the Court. *See*

20  Dkt. 385 at 16 (jury instruction on how to calculate unjust enrichment damages).[8]

21

22  [7] Moreover, because the jury awarded EchoSpan only a portion of the unjust enrichment damages it
requested, *supra* at 2-4, *ATS Products Inc.* is indistinguishable from this case. *See* Dkt. 485 at 15 n.3

23  (Medallia attempting to distinguish *ATS Products Inc.* only on the grounds that the jury there
awarded only a portion of the damages sought).

24  [8] Medallia also insists and critiques that EchoSpan earlier conceded that apportionment was required

25  if any trade secret failed, that EchoSpan did not offer any apportionment evidence, and that it failed
to interrupt trial to offer a new expert opinion. Dkt. 521 at 24-25. These arguments are baseless. The

26  Court did not allow EchoSpan to offer any expert opinion not closely connected to the substance of
the previously-disclosed expert reports, particularly on the issue of apportionment, despite

27  EchoSpan bringing its damages expert back to trial for the purposes of addressing, as much as
possible, the impact of the Court's mid-trial ruling granting Medallia's Rule 50(a) motion. Trial Tr.

28  1094:15-24. Moreover, EchoSpan offered ample testimony that supported an apportioned
calculation of damages. *See* Dkt. 489-30 at 20-21.

And Medallia does not dispute or refute that in the cases it relies on, both *O2 Micro* and *Versata*, the courts only reached any conclusions about apportionment *after* providing the plaintiff ample opportunity to provide such testimony and evidence. Dkt. 510 at 17-18. No such opportunity was provided here, and a new trial would correct that unfair surprise.

### C.     A New Trial Would Be Efficient.

Medallia is incorrect that a new trial would be inefficient. Dkt. 521 at 27. Each side would benefit from a short discovery period on the apportionment issue to be better prepared for each other's arguments at a trial on the issues. And, contrary to Medallia's argument, EchoSpan would not seek to revisit any issue but the apportionment of damages to Trade Secret 6. EchoSpan foresees that it could prepare an expert report on that topic within 30 days of the Court granting a new trial.

Lastly, the Court should reject Medallia's nonsensical invitation that a new trial should not consider the availability of EchoSpan's lost profits damages (which issue, Medallia argues, has already been decided by the jury), but to give it a second bite at the apple in presenting its liability arguments to the jury (which, Medallia fails to mention, has *also* already been decided by the jury, whose verdict on liability was confirmed by the Court, Dkt. 500 at 8-12, 22-23). Dkt. 521 at 28. Instead, a new trial can consider the narrow issue of apportionment of the value of Trade Secret 6.

### D.     In The Alternative, An Injunction is Appropriate.

If the Court denies EchoSpan's request for a new trial, then an injunction is the appropriate remedy in this action. That relief is equivalent to the equitable relief in the form of a reasonable royalty that the court awarded in *O2 Micro*, the case that Medallia claims controls the result here. *See* 399 F. Supp. 2d at 1088. If equitable relief is required in *O2 Micro*, the authority that appears to have been the basis for Medallia's strategic approach to this litigation, that relief is necessary here.

First, as discussed, *supra*, EchoSpan's request for an injunction is neither duplicative nor untimely following entry of the Amended Judgment. The basis of the Court's prior denial of an injunction was that EchoSpan had been "adequate[ly] remed[ied]" by the $25.7 million jury award. Dkt. 423 at 3-4. That jury award has been vacated, and EchoSpan is without any remedy.

Second, Medallia is incorrect that the jury determined that there was no evidence of future harm to EchoSpan. Dkt. 521 at 16. The only conclusion the jury found was that EchoSpan had not

-10-

proven damages to EchoSpan in the form of lost profits. Dkt. 389 at 10. But future lost profits are not the only type of harm from misappropriation of trade secrets. Courts have also recognized the irreparable harm from the misappropriator's continued possession and use of a trade secret. *E.g.*, *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 853 (N.D. Cal. 2019), *modified in part*, No. 5:18-CV-07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) (recognizing that harm to market position, potential disclosure, and "unfair boost" to misappropriator are grounds to enjoin use of misappropriated trade secret). Even cases *cited by Medallia* show that it should be enjoined. In *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*,[9] although the Fifth Circuit determined the plaintiff did not prove damages, it *affirmed* a permanent injunction against the defendant's use of the plaintiff's trade secrets because it *still possessed* trade secret material. 622 F.3d 361, 371 (5th Cir. 2010) (affirming permanent injunction because "the laptops of two trial witnesses who admitted to using MGE software and trade secrets, respectively, were never recovered"). So, too here: because Medallia continues to possess documents containing and reflecting EchoSpan's Trade Secret 6 (*e.g.*, Dkt. 406-19), the possibility of future harm exists. "Given that there may be infringing materials still in [Medallia's] possession," 622 F.3d at 369, an injunction is an appropriate remedy to prevent its continued use. In addition, Medallia is incorrect that an injunction is unavailable solely because the trade secrets statutes under which EchoSpan prevailed permit the recovery of monetary damages. Courts routinely enter injunctions in trade secret cases despite the actual or theoretical availability of damages under those statutes. *E.g.*, *MGE UPS Sys., Inc.*, 622 F.3d at 369; *see also Henry Hope X-Ray Prod., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1343 (9th Cir. 1982) (approving entry of permanent injunction against using trade secrets).

## IV.   THIS IS ECHOSPAN'S FIRST REQUEST FOR RELIEF FROM THE AMENDED JUDGMENT.

Finally, Medallia claims throughout its Response Brief that EchoSpan's Motion is untimely or duplicative. Dkt. 521 at 13, 16. It is neither.

---

[9] Cited by Medallia at Dkt. 521 at 17.

1    Medallia asserts that EchoSpan has somehow already sought a new trial. Dkt. 521 at 13-14.

2  This is incorrect. There was *no occasion* prior to the entry of the Amended Judgment for EchoSpan

3  to move for a new trial: Contrary to Medallia's assertion that EchoSpan already made the arguments

4  it raises its Motion, Dkt. 521 at 14, the arguments EchoSpan now raises were not available to it

5  because, at the time of that hearing, the Judgment affirmed the jury's $11.7 million verdict in

6  EchoSpan's favor. Dkt. 438. Instead, *Medallia* raised *its* argument concerning *its* right to a new trial.

7  Dkt. 468 at 32-36. EchoSpan, contrary to Medallia's false assertion that "EchoSpan already made

8  that same argument," Dkt. 521 at 14, *opposed* Medallia's request. Dkt. 490 at 30-33. EchoSpan's

9  statement at the hearing on Medallia's motion that, as between judgment as a matter of law and a

10  new trial, its preferred remedy would be a new trial, is *not* the equivalent of raising its right to a new

11  trial in light of the Court's Amended Judgment.

12    Medallia's arguments that EchoSpan's Motion is duplicative or untimely entirely ignores the

13  entry of the Amended Judgment. Federal Rule of Civil Procedure 50(d) *expressly* permits a party to

14  move for a new trial following entry of a judgment as a matter of law. Fed. R. Civ. P. 50(d) ("Any

15  motion for a new trial under Rule 59 by a party against whom judgment as a matter of law is

16  rendered must be filed no later than 28 days after the entry of the judgment."). Medallia's argument

17  would render Rule 50(d) a nullity. As to Medallia's argument that EchoSpan's alternative motion for

18  injunctive relief is time-barred, even if Rule 59(e) applied to EchoSpan's request for an injunction,

19  the Rules similarly permit the alteration or entry of a judgment within 28 days. Fed. R. Civ. P. 59(e);

20  see *Caccuri v. Sony Interactive Ent. LLC*, --- F.Supp.3d ---, 2024 WL 2701692, at *10 (N.D. Cal.

21  May 24, 2024) ("the label on the motion is not dispositive"). Medallia fails to explain why the Court

22  should ignore the Rules.

23    Medallia also argues, without support, that EchoSpan's Motion must be tethered to the

24  original judgment, and cannot be sought following the Amended Judgment. Medallia ignores that

25  the Amended Judgment nullified the original judgment and fundamentally altered the rights and

26  obligations of the parties—it stripped EchoSpan of a nearly $26 million judgment and relieved

27  Medallia from paying *any* amount for its willful and malicious misappropriation—which permits a

28  party to move for relief pursuant to Rule 59. As to Rule 59(b), Courts have recognized the right to

1    seek a new trial following a substantively altered or amended judgment following the entry of

2    judgment as a matter of law (or its predecessor, the JNOV). *See, e.g., Walker v. Bain*, 257 F.3d 660,

3    671 (6th Cir. 2001) (rejecting argument similar to that raised by Medallia as "unsupported"); *Cornist*

4    *v. Richland Par. Sch. Bd.*, 479 F.2d 37, 39 (5th Cir. 1973) ("[T]he second judgment prevails and

5    begins the running of the [] limitation, if it is a superseding judgment making a change of substance

6    which 'disturbed or revised legal rights and obligations.'").

7          As to EchoSpan's request for injunctive relief, as an initial matter, Medallia misrepresents

8    that EchoSpan's alternative request is untimely because the original judgment "denied injunctive

9    relief." Dkt. 521 at 17 n.6. The original judgment was silent as to the availability of injunctive relief.

10   Dkt. 438. That judgment also *no longer exists*. Rule 59(e) does not state that a motion to amend a

11   judgment must be filed within the time specified after the entry of the *original* judgment, only that it

12   must be filed following the entry of judgment, which may be an amended judgment, as here. And, as

13   with Rule 59(b), courts recognize the ability to invoke Rule 59(e) following an amended judgment.

14   *See Paterson v. California Dep't of Gen. Servs.*, No. 2:05CV00827-MCE-JFM, 2008 WL 4286579,

15   at *1 (E.D. Cal. Sept. 17, 2008) (recognizing that deadline to raise Rule 59(e) request to amend

16   judgment with an injunction is triggered by amended judgment, though in that case, request was not

17   within Rule 59(e) deadline).

18   **V.      CONCLUSION**

19         Therefore, EchoSpan respectfully requests that the Court grant its Motion for a New Trial on

20   Damages Pursuant to Fed. R. Civ. Pro. 59 or, in the alternative, an injunction.

21   Dated: August 30, 2024              COUNCILL, GUNNEMANN & CHALLY, LLC

22
                                        By: */s/ Jonathan R. Chally*
23                                           Jonathan R. Chally (GA Bar No.141392)
                                             (*Pro Hac Vice*)
24                                           Jennifer R. Virostko (GA Bar No. 959286)
                                             (*Pro Hac Vice*)
25                                           Joshua P. Gunnemann (GA Bar No. 152250)
                                             (*Pro Hac Vice*)
26                                      LEWIS & LLEWELLYN LLP

27                                           Evangeline A.Z. Burbidge (CA Bar No. 266966)
                                             Zachary C. Flood (CA Bar No. 313616)
28                                      *Attorneys for Plaintiff/Counter-Defendant EchoSpan, Inc.*

# EXHIBIT A

FILED

MAR - 9 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 02 MICRO INTERNATIONAL LIMITED, a Cayman Islands corporation, | No. C 00-04071 CW (consolidated with C-01-03995 CW) |
| Plaintiff, | |
| v. | **SECOND AMENDED JUDGMENT** |
| MONOLITHIC POWER SYSTEMS, INC., a California Corporation. | |
| Defendant. | |
| MONOLITHIC POWER SYSTEMS, INC., a California corporation, | |
| Counterclaimant, | |
| v. | |
| 02 MICRO INTERNATIONAL LIMITED, a Cayman Islands corporation, and 02 MICRO, INC., a California corporation, | |
| Counterdefendants. | |

1295XX

For the reasons set forth in this Court's Order Granting in Part and Denying in Part 02 Micro's Motion to Alter or Amend the Judgment and Renewed Motion for Judgment as a Matter of Law; Denying MPS' Renewed Motion for Judgment as a Matter of Law; and Denying in Part and Conditionally Granting in Part MPS' Motions for a New Trial,

IT IS HEREBY ORDERED AND ADJUDGED:

*Entered on Civil Docket*
*3/9/06*

United States District Court

For the Northern District of California

1    That Plaintiff 02 Micro International Limited recover of

2    Defendant Monolithic Power Systems, Inc., the sum of $900,000.00,

3    for a reasonable royalty pursuant to California Civil Code Section

4    3426.3(b), with prejudgment interest in the amount of $321,363.00,

5    and $1,800,000.00, for exemplary damages pursuant to California

6    Civil Code Section 3426.3(c), post-judgment interest as provided by

7    law, and its costs of action; that the OZ960, OZ961, OZ969A and

8    OZ970 products of 02 Micro International Limited and 02 Micro,

9    Inc., and/or any inverter boards utilizing such products do not

10   infringe claims 3 and 10 of U.S. Patent No. 6,114,814; that claims

11   3 and 10 of U.S. Patent No. 6,114,814 are invalid pursuant to 35

12   U.S.C. § 102; that the OZ960, OZ961, OZ969A and OZ970 products of

13   02 Micro International Limited and 02 Micro, Inc., and/or any

14   inverter boards utilizing such products do not infringe claims 1,

15   2, 8, 9, 14, 21, and 25 of U.S. Patent No. 6,316,881; that claims

16   1, 2, 8, 9, 14, 21 and 25 of U.S. Patent No. 6,316,881 are invalid

17   pursuant to 35 U.S.C. § 102; and that 02 Micro International

18   Limited shall take nothing on its claims against Monolithic Power

19   Systems, Inc., for intentional and negligent interference with

20   prospective economic advantage.

21       IT IS FURTHER ORDERED AND ADJUDGED:

22       That Monolithic Power Systems, Inc., shall take nothing on its

23   claims and counterclaims against 02 Micro International Limited and

24   Counterdefendant 02 Micro, Inc.

25   / / /

26   / / /

27   / / /

28

IT IS FURTHER ORDERED AND ADJUDGED:

That 02 Micro International Limited failed to show by clear and convincing evidence that Monolithic Power Systems, Inc., engaged in inequitable conduct.

Dated:   MAR - 9 2006

CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

O2 Micro Intl.,

        Plaintiff,

   v.

Monolithic Power,

        Defendant.

                      /

Case Number: CV00-04071 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 9, 2006, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Charlene M. Morrow
Michael Sacksteder
Fenwick & West LLP
801 California Street
Mountain View, CA 94041-2008

Dan L. Bagatell
Perkins Coie Brown & Bain P.A.
2901 North Central Ave., Ste 2000
Phoenix, AZ 85012-2788

Daniel Johnson
Morgan Lewis & Bockius LLP
One Market Street
Spear Street Tower
San Francisco, CA 94105-1126

Duane H. Mathiowetz
Howrey Simon Arnold & White LLP
525 Market Street
Suite 3600
San Francisco, CA 94105-2708

Michael Barclay
James DiBoise
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050

Dated: March 9, 2006

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk